UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS A. FLICK,                          Case No. 09-14838

            Plaintiff,                    Thomas L. Ludington
vs.                                       United States District Judge

COMMISSIONER OF                           Michael Hluchaniuk
SOCIAL SECURITY,                          United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 22, 25)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On December 14, 2009, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Thomas L. Ludington referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for a period of

disability, disability insurance, and supplemental security income benefits.  (Dkt.

3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt.

22, 25).

B.      Administrative Proceedings

Plaintiff filed the instant claims on December 19, 2006, alleging that he became unable to work on November 11, 2006.  (Dkt. 8, Tr. at 114).  The claim was initially disapproved by the Commissioner on March 28, 2007.  (Dkt. 8, Tr. at 66-76).  Plaintiff requested a hearing and on December 3, 2008, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Ayrie Moore, who considered the case *de novo*.  In a decision dated March 2, 2009, the ALJ found that plaintiff was not disabled.  (Dkt. 8, Tr. at 10-29).  Plaintiff requested a review of this decision on May 6, 2009.  (Dkt. 8, Tr. at 7-9).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-8E and 14F, Dkt. 8, Tr. at 4), the Appeals Council, on October 9, 2009, denied plaintiff's request for review.  (Dkt. 8, Tr. at 1-4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   <u>ALJ Findings</u>

Plaintiff was twenty-nine years of age at the time of the most recent administrative hearing.  (Dkt. 8, Tr. at 28).  Plaintiff's relevant work history included approximately ten years as a machine operator, in packaging, as an inspector, as a roofer, and as a pizza cook.  (Dkt. 8, Tr. at 27-28, 58, 132, 139).  In denying plaintiff's claims, defendant Commissioner considered a back injury, a herniated disk, and nerve damage as possible bases of disability.  (Dkt. 8, Tr. 138).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since November 11, 2006.  (Dkt. 8, Tr. at 15).  At step two, the ALJ found that impairments of back disorder/degenerative disc disease; chronic right-sided radiculopathy; depression and anxiety disorder were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.  At step four, the ALJ found that plaintiff could not perform his previous work as a machine operator.  (Dkt. 8, Tr. at 27).  At step five, the ALJ

denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 8, Tr. at 28).

      B.    <u>Plaintiff's Claims of Error</u>

Plaintiff claims that the ALJ failed to properly evaluate his claim under Listing 1.04A and cited no medical evidence to support her conclusory analysis. According to plaintiff, the medical evidence contradicts the ALJ's conclusions. According to plaintiff, the medical evidence showed that he continued to suffer "degenerative disk disease . . . resulting in compromise of a nerve root," which continued after the surgery in August 2007.  That is, although the disk herniation that initially caused the nerve compression was addressed by the surgery, the scar tissue resulting from that procedure was causing the same or worse nerve root and thecal sac compression afterwards.

Plaintiff also argues that the ALJ failed to give controlling weight to the medical source opinions.  Contrary to the ALJ's assertion, Lisa L. Guyot, M.D., Ph.D., treating neurosurgeon, stated on April 27, 2007: "Because he has failed conservative therapy and appears in severe pain and cannot work, I offered him a right L5-S1 laminectomy and diskectomy."  (Tr. 213).  The treating primary care physician, Ashish Sarin, M.D., concluded on May 19, 2009 that there had been no change in plaintiff's condition since November 2006:  "Patient is unable to return to work & I do not foresee any positive change for this patient to ever

return to work." (Tr. 292). Similarly, regarding plaintiff's depression, the treating psychiatrist, William McAllister, M.D., and treating therapist, Matthew Biafora, Ph.D., stated on April 7, 2008 that he suffered major depression and anxiety, resulting in a Global Assessment of Functioning (GAF) of 40. (Tr. at 291).

Plaintiff also asserts that the ALJ's decision was not supported by substantial evidence, and that she based her decision on a selective and inaccurate statement of the evidence regarding the severity of plaintiff's impairments. For example, she claimed that: "As of October 2007, the claimant reported being more active, doing more physical activities around the house and lifting up his kids." (Tr. 26). This apparently refers to Dr. Guyot's note of October 4, 2007, less than two months after surgery, when she reported that plaintiff did tell her that he had been more active, had been picking up his kids, and had been doing a lot of physical activities around the house. (Tr. 204). However, plaintiff contends that the ALJ ignored the doctor's statement that plaintiff had been "doing a lot more activities than he should," indicating her opinion that his condition prevented that degree of activity, which was mostly unspecified. That note also indicates that his attempts to engage in some normal activities resulted in rapid deterioration of his back condition after early improvement from the surgery. Plaintiff argues that the ALJ relied on a similarly selective and inaccurate summary of Dr. Guyot's last report, claiming that the doctor said that he "was able to stand, ambulate, had good

strength, but had a very exaggerated walk and gave poor effort."  (Tr. 26).

However, according to plaintiff, the ALJ omitted Dr. Guyot's statement that she

would prepare a letter to plaintiff's probation officer explaining why his condition

prevented him from working, another medical source opinion that plaintiff asserts,

the ALJ failed to consider.

C.   Commissioner's Cross-Motion for Summary Judgment

Plaintiff correctly notes that an MRI done on November 28, 2006 "showed a

large right paracentral disc herniation at L5 at L5-S1 markedly compressing the

intradural right S1 nerve root."  (Tr. 18, citing, Tr. 162).  However, according to

the Commissioner, plaintiff fails to acknowledge that the back surgery he

underwent in August of 2007 corrected the nerve root compression.  Specifically,

plaintiff underwent a right-sided L5- S1 laminectomy and diskectomy at Genesys

Regional Medical Center on August 8, 2007.  (Tr. 206-07).  Plaintiff had these

procedures because "[t]here was a bulging disk complex underneath the S1 nerve

root."  (Tr. 206).  The surgeon removed the bulging portion of the disk,

as well as the edge of the spur.  (Tr. 206).  After the excision, the surgeon noted

that "the disk was flat and the nerve was free."  (Tr. 207).  Later, the MRI done on

October 11, 2007 showed a significant "decrease in disc protrusion at L5-S1" and,

importantly, "no intrinsic spinal cord abnormality."  (Tr. 203).  Additionally,

x-rays of plaintiff's lumbar spine taken on June 3, 2008, were negative.  (Tr. 243).

Thus, according to the Commissioner, following surgery, there was no longer a herniated disc impinging the spinal cord as it once had.  While the record continued to document chronic right-sided radiculopathy and residual nerve root damage, § 1.00(E)(2) explains that this does not satisfy the Listing: "[n]eurological abnormalities may not completely subside after treatment or with the passage of time.  Therefore, residual neurological abnormalities that persist after it has been determined clinically or by direct surgical or other observation that the ongoing or progressive condition is no longer present will not satisfy the required findings in 1.04."  Thus, plaintiff cannot satisfy the capsule definition of Listing 1.04(A).  Additionally, while the record prior to surgery reflected decreased motor strength of the legs, a decrease in right ankle jerk, and numbness in the right foot in 2006 and early 2007, the record shows that these abnormalities resolved following surgery.  (Tr. 167, 186-87).  Notably, Rama D. Rao, M.D., examined plaintiff on November 5, 2007, and reported that plaintiff's     cranial nerves were grossly intact; motor strength was good in the upper and lower extremities, sensation to pinprick and touch was grossly intact; deep tendon reflexes were normal in the biceps, triceps, bronchioradialis, knees and ankles bilaterally.  (Tr. 223).  Similarly, on April 24, 2008, Dr. Rao examined plaintiff and reported that neurologic examination revealed good motor strength in the upper and lower extremities and that sensation to pinprick and touch were grossly intact.  (Tr. 22, citing, Tr. 217).

Wilbur J. Boike, M.D., a neurologist, examined plaintiff on May 14, 2008, and reported that his extremity strength, muscle tone, and bulk were totally normal in all extremities.  (Tr. 22, citing, Tr. 227).  The ALJ also noted that physical examination done on June 12, 2008, revealed normal range of motion of the extremities; no motor deficits; no sensory deficits; and normal reflexes.  (Tr. 23, citing, Tr. 238).  The ALJ further noted that on examination on July 26, 2008, plaintiff had no complaints of sensory or motor loss

and range of motion of his extremities was normal.  (Tr. 24, citing, Tr. 232-33). Additionally, the ALJ noted that examination on September 27, 2008 revealed normal range of motion of the extremities and neck; no muscle spasms; normal reflects; and no motor or sensory deficits.  (Tr. 24, citing, Tr. 230).  In light of this evidence, the Commissioner asserts that plaintiff fails to satisfy all the criteria of Listing 1.04A.

The Commissioner also urges the Court to reject plaintiff's "cherry-picking" argument because that is precisely the analysis that Listing 1.04(A) requires an ALJ to perform when determining whether the evidence of record satisfies the criteria of the Listing.  Here, the ALJ cited to Dr. Boike's clinical examination findings to show that the evidence of record did not satisfy the criteria for muscle weakness and sensory deficits as required by Listing 1.04(A).  To satisfy a Listing, a claimant must satisfy *all* the criteria of that Listing.  Thus, while plaintiff notes

that some of the criteria was met, the ALJ properly cited to evidence showing that others were not satisfied.

The Commissioner also points out that the GAF is not included in SSA's regulations as a requirement to meet any impairment listed in the Listings. Indeed, when the Social Security Regulations were modified in 2000, the Agency specifically declined to comment on the GAF scale in the regulations, stating, "[t]he GAF scale ... does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (2000). Critically, according to the Commissioner, the GAF ratings are not the product of a standardized test; therefore, they are of limited usefulness since one clinician may subjectively judge an individual to function at one range of the scale while another clinician may subjectively judge that same individual to function at a higher range of the scale. Since the GAF rating is just one tool used by clinicians to develop the clinical picture, it cannot be used in isolation from the rest of the evidence to make a disability decision. In any event, a GAF score in the range of 40 to 50 does not establish "disability" under the Act. *See Turcus v. Soc. Sec. Admin.*, 110 Fed.Appx. 630, 632 (6th Cir. 2004) (GAF of 35 not disabling); *Nelson v. Comm'r of Soc. Sec.*, 195 Fed.Appx. 462 (6th Cir. 2006) (GAF of 50 not disabling). Again, a characterization of a GAF score as a substitute for an RFC assessment is inaccurate, and an ALJ need not refer to a GAF score in determining

a claimant's RFC.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511

(6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority

requiring the ALJ to put stock in a GAF score in the first place.").  As the ALJ

pointed out, plaintiff "did not initially allege any mental impairments at the time of

his application."  (Tr. 27).  The ALJ observed that plaintiff did not see any mental

health specialist until April 2008.  (Tr. 27).  Further, the ALJ noted that "there is

no opinion from the claimant's mental health treaters that the claimant is precluded

from undertaking work activities."  (Tr. 27).  Nevertheless, the ALJ stated,

"[g]iving the claimant the benefit of every consideration, however, I have limited

him to simple, unskilled work."  (Tr. 27).  According to the Commissioner, the

mental status examination findings in the record support no greater limitations.

Therefore, substantial evidence supports the ALJ's mental RFC finding.

The Commissioner also urges the Court to reject plaintiff's contention that

the ALJ should have given more weight to his treating physician's conclusory

opinions that he is "disabled" because "opinions about whether an individual ... is

'disabled' or 'unable to work'... are administrative findings that may determine

whether an individual is disabled [and] are reserved to the Commissioner."  *Id*.; *see*

*also* 20 C.F.R. §§ 404.1527(e) ("Medical source opinions on issues reserved to the

Commissioner.  Opinions on some issues, such as the examples that follow,

are not medical opinions, as described in paragraph (a)(2) of this section, but are,

Report and Recommendation
Cross-Motions for Summary Judgment
*Flick v. Comm'r*; Case No. 09-14838

instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.").  Thus, the distinction between "medical opinions," 20 C.F.R. § 404.1527(a)(2), and "medical source opinions on issues reserved to the Commissioner," 20 C.F.R. § 404.1527(e), should not be blurred. Additionally, the statement from Dr. Sarin is entirely conclusory and does not identify any clinical examination findings, diagnostic evidence, or personal observations from examination to support his very pessimistic opinion.  The ALJ restricted plaintiff to a range of sedentary work with a sit/stand option (Tr. 17), and noted that "[t]he medical evidence is consistent with the above residual functional capacity and is inconsistent with allegations of disabling pain, numbness, weakness, inability to sit for prolonged periods."  (Tr. 26).  In particular, the ALJ cited the same evidence she cited in concluding that plaintiff was unable to satisfy the criteria of Listing 1.04(A), which requires muscle weakness, motor and sensory deficits, and reflex abnormalities.  (Tr. 26).  Additionally, the ALJ observed that the record does not include any medical opinions indicating that plaintiff was "precluded from undertaking work activities."  (Tr. 28).  Thus, according to the Commissioner, the ALJ reasonably concluded that these physical examination findings did not support the need for limitations beyond those identified in his RFC finding.

The ALJ also observed that "[t]here is evidence that the claimant has not been entirely compliant in taking prescribed medications for his conditions, which suggest that they symptoms may not have been as limiting as the claimant has alleged in connection with this application." (Tr. 26). The record also does not indicate that plaintiff suffered from any side effects as a result of his medications. Thus, the ALJ did not identify a need to further restrict plaintiff. The ALJ noted that plaintiff "reported being more active, doing more physical activities around the house and lifting up his kids. He testified that he is able to hold a phone, write, open a bottle, grip things, buttons and zip clothes, watches television, and plays video games." (Tr. 27, citing, Tr. 48, 51, 53-54, 204). The ALJ also noted that "one of the claimant's physicians advised the claimant to remain as active as possible." (Tr. 27, citing, Tr. 227). Thus, the Commissioner asserts that the ALJ reasonably determined that plaintiff's activities of daily living did not establish a need for limitations beyond light work.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc.Sec.Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      The Listing

Plaintiff "bears the burden of proof at step three to demonstrate that he has or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1." *Arnold v. Comm'r of Soc. Sec.*, 2000 WL 1909386, *2 (6th Cir. 2000), citing, *Burgess v. Sec'y of Health and Hum. Serv.*, 964 F.2d 524, 528 (6th Cir. 1992). If plaintiff "can show an impairment is listed in Appendix 1 ("the listings"), or is

Report and Recommendation
Cross-Motions for Summary Judgment
*Flick v. Comm'r*; Case No. 09-14838

equal to a listed impairment, the ALJ must find the claimant disabled." *Buress v. Sec'y of Health and Hum. Serv*, 835 F.2d 139, 140 (6th Cir. 1987). "The listing of impairments 'provides descriptions of disabling conditions and the elements necessary to meet the definition of disabled for each impairment." *Arnold*, at *2, quoting, *Maloney v. Comm'r of Soc. Sec.*, 2000 WL 420700 (6th Cir. 2000). In order for plaintiff "to qualify as disabled under a listed impairment, the claimant must meet all the requirements specified in the Listing." *Id*. This must be done by presenting specific medical findings that satisfy the particular Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-532 (1990). An impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify." *Id*. at 530.

Plaintiff asserts that he has satisfied Listing 1.04, subsection A.[2] Listing 1.04 provides the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including cauda equina) of the spinal cord. With:
>
> A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)

---

[2] Plaintiff does not claim that he has satisfied subsection B (spinal arachnoiditis) or subsection C (lumbar spinal stenosis).

> accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight leg
> raising test (sitting and supine);

An implication, based on radiating pain, is not enough to satisfy the Listing. *See, e.g.*, *Steagall v. Comm'r of Soc. Sec.*, 2009 WL 806634 (S.D. Ohio 2009) (Treating physician's opinion that plaintiff met the Listing for chronic radiculopathy was insufficient to satisfy the listing where medical records stated that there was no nerve root compression.).  Moreover, plaintiff points to no evidence showing "motor loss," demonstrated by atrophy associated with muscle weakness, which is required by the Listing. *See e.g.*, *Waits v. Astrue*, 2008 WL 4276547, *10 (S.D. Ohio 2008).  On June 19, 2008, plaintiff reported mild sensory loss and no motor loss.  (Tr. 237). On June 12 and 30, 2008, July 26, 2008, August 27, 2008, plaintiff reported no sensory or motor loss.  (Tr. 229, 232, 235, 240).  Thus, the undersigned agrees with the ALJ that plaintiff failed to meet his burden of proof and there is no basis to disturb the ALJ's findings.

### D.   RFC, Mental Impairment, Treating Physician Opinion

As it relates to his mental impairment, plaintiff merely points to his GAF score and the existence of depression and anxiety.  As the Commissioner points out, plaintiff does not offer any particular limitations imposed by any treating physician and plaintiff's GAF score alone does not equate to disability. Nevertheless, the ALJ stated, "[g]iving the claimant the benefit of every

consideration, however, I have limited him to simple, unskilled work."  (Tr. 27).

The undersigned finds no basis to disturb the ALJ's findings regard plaintiff's

mental impairment and resulting RFC determination.

In addition, the undersigned agrees that no treating physician imposed

greater restrictions on plaintiff than those found by the ALJ.  While plaintiff claims

that the opinions of his treating physicians were ignored or not given proper

weight, those opinions do not support plaintiff's claim.  Plaintiff argues that the

ALJ ignored Dr. Guyot's statement that she would write a letter to plaintiff's

probation officer saying that he could not work.  Dr. Guyot wrote "[plaintiff] also

requested I send a letter to his probation officer as to why he has been off work.

We will send this to his probation officer letting them know he did have surgery in

August."  (Tr. 202).  Nothing in Dr. Guyot's letter could be interpreted as imposing

permanent restrictions on plaintiff precluding him from all work on a going

forward basis.  The ALJ accommodated all of plaintiff's limitations as supported

by the record evidence and, therefore, the undersigned finds no basis to disturb the

ALJ's findings.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

Report and Recommendation
Cross-Motions for Summary Judgment
*Flick v. Comm'r*; Case No. 09-14838

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may

Report and Recommendation
Cross-Motions for Summary Judgment
*Flick v. Comm'r*; Case No. 09-14838

rule without awaiting the response.

Date: March 7, 2011                                   s/Michael Hluchaniuk
                                                     Michael Hluchaniuk
                                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 7, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Victor L. Galea, Sr., William L. Woodard, AUSA, and the Commissioner of Social Security.

                                                     s/Darlene Chubb
                                                     Judicial Assistant
                                                     (810) 341-7850
                                                     darlene_chubb@mied.uscourts.gov